J-S45024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RICHARD TERRELL | |
| Appellant | No. 1671 EDA 2013 |

Appeal from the Judgment of Sentence of May 10, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.:  CP-51-CR-01103791-2005,
CP-51-CR-02065551-2006, and CP-51-CR-0016127-2009

BEFORE:  BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                **FILED NOVEMBER 26, 2014**

Richard Terrell ("Terrell") appeals from the judgment of sentence imposed on May 10, 2013, following revocation of probation for both technical and direct violations.  We vacate and remand.

The trial court set forth the background of this case as follows:

Following plea negotiations, on September 13, 2012, [Terrell] entered a guilty plea pursuant to CP-51-CR-00016127-2009 to the charges of Simple Assault and Resisting Arrest.  [*See* 18 Pa.C.S.A. §§ 2701, 5104.]  [The trial c]ourt sentenced [Terrell] to time served to twenty-three months' incarceration in the county jail followed by one year of reporting probation.  With respect to CP-51-CR-[02065551-2006]  and  CP-51-CR-[0]1103791-2005, [Terrell] pleaded guilty on October 16, 2007, before the [court] to the charge of Carrying a Firearm without a License under both bills of information and received concurrent

_____

[*]    Former Justice specially assigned to the Superior Court.

sentences of six to twelve months' incarceration followed by four years' probation.  [**See** 18 Pa.C.S.A. § 6106.]

[Terrell] thereafter appeared before [the trial c]ourt on May 10, 2013, for a violation of probation hearing for each of the above cases.  At the conclusion of the hearing, [the c]ourt revoked [Terrell's] probation in each of the cases.  On CP-51-CR-0016127-2009, [Terrell] received a sentence of one to two years' incarceration on the Resisting Arrest charge.  On the Simple Assault charge, [the c]ourt revoked his parole and ordered [Terrell] to serve the remainder of his sentence.  On CP-51-CR-[02065551]-2006, [the c]ourt imposed a sentence of two to four years' incarceration and ordered that the sentence be served consecutive to the sentence imposed on the Resisting Arrest charge.  Finally, with respect to CP-51-CR-[0]1103791-2005, a sentence of two to four years' incarceration was imposed on [Terrell], said sentence to run consecutively to the two sentences imposed in the other cases.

Trial Court Opinion ("T.C.O."), 10/28/2013, at 1-2 (footnotes omitted).

On May 16, 2013, Terrell filed a motion for reconsideration of his sentence, which the trial court denied on May 31, 2013.  Terrell timely appealed on June 10, 2013.[1]  **See** Pa.R.Crim.P. 708(E).  On August 8, 2013, Terrell filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and a request for an extension of time on the grounds that counsel had not received a copy of the revocation hearing transcript. The court granted the extension, and, on September 25, 2013, Terrell filed a supplemental Rule 1925(b) statement challenging the discretionary aspects of his revocation sentence.  On October 28, 2013, the trial court entered its opinion.  **See** Pa.R.A.P. 1925(a).

_____

[1]     June 9, 2013, fell on a Sunday.

- 2 -

Terrell raises the following question for our review:

Was not the sentencing court's imposition of consecutive state incarceration sentences on each case for a first probation revocation unreasonable, manifestly excessive and an abuse of discretion where the court failed to conduct an individualized sentencing, did not properly consider the sentencing factors, failed to order and evaluate a pre-sentence investigation, ignored whether the sentence was the least stringent to protect the community, and [Terrell's sentence] was the result of partiality, bias and ill will as demonstrated by the court *inter alia* referring to [Terrell] as "this animal", a "crime wave" and presuming without evidence that he is likely to kill his wife?

Terrell's Brief at 3.

Terrell's challenge to the discretionary aspects of his revocation sentence is within this Court's scope of review. ***See Commonwealth v. Cartrette***, 83 A.3d 1030, 1034 (Pa. Super. 2013). "Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." ***Commonwealth v. Ahmad***, 961 A.2d 884, 888 (Pa. Super. 2008) (citation omitted). In addition, our standard of review is well-settled:

[T]here is no absolute right to appeal when challenging the discretionary aspect of a sentence. 42 Pa.C.S. § 9781(b). Rather, an [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code. In determining whether a substantial question exists, this Court does not examine the merits of the sentencing claim.

In addition, issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary

aspect of a sentence is waived. Furthermore, a defendant is required to preserve the issue in a court-ordered Pa.R.A.P. 1925(b) concise statement and a Pa.R.A.P. 2119(f) statement.

*Cartrette*, 83 A.3d at 1042 (case citations and quotation marks omitted).

Terrell raises three challenges to the discretionary aspects of his sentence: that his sentence is excessive and unreasonable; that the court failed to apply relevant sentencing criteria and fashion an individualized sentence; and that the court exhibited bias, ill will and partiality in its comments during sentencing. Terrell's Brief at 14-16. Terrell asserted each of these challenges in his Rule 1925(b) statement. **See** Rule 1925(b) Statement, 9/25/2013, at 2 ¶ 3. Further, Terrell's brief contains a statement of reasons for allowance of appeal from the discretionary aspects of his sentence pursuant to Rule 2119(f), which statement also includes these challenges. **See id.** at 13-17. Accordingly, it remains for us to determine whether these three challenges were "raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings." **Cartrette**, 83 A.3d at 1042.

Terrell's first and second challenges clearly are preserved in his post-sentence motion, in which he argues that his "aggregate sentence is excessive given the nature of the violations and [Terrell's] prior record." Post-Sentence Motion, 5/16/2013, at 1 ¶ 2. Terrell did not raise the issue of bias, ill will and partiality by the trial court in his post-sentence motion. **Id.** However, our examination of the record reveals that Terrell presented this claim to the trial court during the sentencing proceeding.

The crux of Terrell's third claim is that his sentence "was the result of partiality, bias and ill will as demonstrated by the court *inter alia* referring to [Terrell] as 'this animal', a 'crime wave' and presuming without evidence that he is likely to kill his wife[.]"  Terrell's Brief at 3; **see also** Notes of Testimony ("N.T."), 5/10/2013, at 16.  At the sentencing hearing, counsel for Terrell responded to the trial court's remarks as follows:

> [Counsel for Terrell]:   Your Honor, I'm not disputing that he's in violation for not reporting.  I understand that.  I conceded that he is in technical violation for not reporting.  And he's made a lot of dumb decisions with regard to that.
>
> But this notion that he's an animal who is going to kill somebody, I mean, I gave you what his total sum convictions are—
>
> The Court:      I believe that, [Counselor].  I believe that.  I believe that if there is repetitious domestic violence, it eventually becomes very, very serious.

*Id.* at 20-21.  Having been cut off by the trial court, counsel moved on to argue favorable mitigating factors.  *Id.* at 21-22.  The trial court then proceeded to revoke Terrell's parole and sentence him to the above-mentioned period of incarceration. *Id.* at 23.

In **Commonwealth v. Smith**, 69 A.3d 259, 265 (Pa. Super. 2013), we granted relief to an appellant where it was "the trial court that prevented Appellant from asserting which right he sought to invoke."  **Smith**, 69 A.3d at 265.  Here, after labeling Terrell an "animal" and a "crime wave," the trial court interrupted Terrell's counsel's attempt to express concern with that language.  It would have been the better practice for Terrell's counsel to

reiterate this challenge in Terrell's post-sentence motion. However, we will not penalize Terrell by imposing a hypertechnical waiver in circumstances where Terrell's counsel expressly made a record of his concern with the court's characterization of Terrell as "an animal who is going to kill somebody." N.T., 5/10/2013, at 20. This was sufficient to preserve an objection to the trial court's language for our review, an objection cut short by the trial court's interruption. *See Smith*, 69 A.3d at 265; *Commonwealth v. Turner*, 450 A.2d 9, 11 (Pa. Super. 1982) (rejecting Commonwealth's waiver argument where "appellant's attorney challenged the admissibility of the testimony of [a witness] even though he did not utter the magic words, 'I object'"). Accordingly, Terrell has preserved all three challenges to the discretionary aspects of his sentence. *See Cartrette*, 83 A.3d at 1042.

We must now determine whether Terrell has raised a substantial question that the sentence was not appropriate under the sentencing code, a determination that would permit us to examine the merits of his sentencing claims. *See id.*

> From an appellant's Rule 2119(f) statement, the Superior Court decides whether to review the discretionary aspects of a sentence based upon a case-by-case determination as to whether a substantial question concerning the sentence exists. To demonstrate that a substantial question exists, a party must articulate reasons why a particular sentence raises doubts that the trial court did not properly consider [the] general guidelines provided by the legislature.

***Commonwealth v. Mouzon***, 812 A.2d 617, 621-22 (Pa. 2002) (citations omitted).

An averment that the court "failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs" of an appellant raises a substantial question. ***Commonwealth v. Riggs***, 63 A.3d 780, 786 (Pa. Super. 2012). "A claim that a sentence is manifestly excessive such that it constitutes too severe a punishment raises a substantial question." ***Commonwealth v. Kelly***, 33 A.3d 638, 640 (Pa. Super. 2011) (citation omitted). Likewise, "an allegation of bias in sentencing implicates the fundamental norms underlying sentencing and hence, we find that it raises a substantial question." ***Commonwealth v. Corley***, 31 A.3d 293, 297 (Pa. Super. 2011). Thus, Terrell has raised substantial questions about his sentence, Terrell's Brief at 14-16, and we will proceed to review their merits.

First, Terrell contends that "the sentencing court did not consider the required sentencing factors." Terrell's Brief at 19. Specifically, he argues that the trial court abused its discretion because it focused on Terrell's failures to report instead of "the positives" of his probation history, failed to order a pre-sentence investigation report ("PSI"), and did not permit Terrell's wife to testify. ***Id.*** at 22-26. We disagree.

Our legislature has imposed the following general standards to observe when fashioning a sentence:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under section 2155 (relating to publication of guidelines for sentencing, resentencing and parole and recommitment ranges following revocation). In every case in which the court imposes a sentence for a felony or misdemeanor, modifies a sentence, resentences an offender following revocation of probation, county intermediate punishment or State intermediate punishment or resentences following remand, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. . . . Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

42 Pa.C.S.A. § 9721(b). "When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa. Super. 2014).

Here, the trial court heard testimony from Parole Officer Ngoc Lam, who presented a detailed case history, including Terrell's technical violations, reporting history, arrests, drug testing results, and family history. *See* N.T., 5/10/2013, at 3-13. Contrary to Terrell's claim that the court did not consider "the positives" of his case history, the court heard Officer Lam testify:

I'm going to provide you the positive things he did. He did complete the gun court stipulations, which was to complete the firearms education class. He did complete his community service. He did complete the house arrest portion requirements. He submitted to 11 urine tests between the period of 7/29/2008 to 11/12/2009. Nine were negative and two were positive for alcohol.

*Id.* at 6. Terrell's counsel also was given an opportunity to respond to Officer Lam's report and to provide additional context; counsel noted that "[t]here is nothing in any of the sentencing documents to show that he was ordered to stay away from alcohol." *Id.* at 19; *see id.* at 17-22.

Officer Lam's testimony demonstrates that Terrell has three direct violations of parole for arrests of disorderly conduct, aggravated assault, simple assault, recklessly endangering another person, harassment, and false identification. *Id.* at 5-6. He has been arrested twenty-three times. *Id.* at 15. The complainant in several of the charges was his wife, who repeatedly chose not to press charges. *Id.* at 7-8. Terrell rescheduled his reporting appointments about seventy-five percent of the time, claimed that he had foot surgery and that his daughter had been hospitalized but failed to provide any proof of either incident, and then stopped reporting altogether. *Id.* at 9-10. At this point, Terrell's wife began calling his probation officer to reschedule on his behalf. *Id.* at 10-11. He failed to obtain a phone line to enroll in house arrest and then refused to report. *Id.* at 11-12.

Thus, the record supports the trial court's determination that "probation had not been effective at deterring [Terrell] from committing more crimes. [His] conduct demonstrated that he presented a continuing

threat to the peace and harmony of the community and warranted the imposition of a sentence that would prevent any future violations as well as send a message to [Terrell] that he cannot snub his nose at authority." T.C.O. at 4; *see Antidormi*, 84 A.3d at 761.

Terrell next contends that the court erred in failing to order a PSI, claiming that the court "had made its decision at the outset of the hearing." Terrell's Brief at 25-26.

Rule of Criminal Procedure 702 provides: "The sentencing judge may, in the judge's discretion, order a pre-sentence investigation report in any case." Pa.R.Crim.P. 702(A)(1).

> The first responsibility of the sentencing judge [is] to be sure that he ha[s] before him sufficient information to enable him to make a determination of the circumstances of the offense and the character of the defendant. Thus, a sentencing judge must either order a PSI report or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background.

*Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725-26 (Pa. Super. 2013) (citing *Commonwealth v. Goggins*, 748 A.2d 721, 728 (Pa. Super. 2000) (*en banc*)).

As previously discussed, the trial court heard a detailed history of Terrell's record from Officer Lam and counsel for Terrell. *See* N.T. at 3-22. Critically, Terrell fails to identify any additional information that would have been provided in a PSI, and his claim that the court already had "made its

decision" is belied by the court's persistent questioning of both parties. Thus, the court conducted a sufficient presentence inquiry to be apprised of the particular circumstances of Terrell's case, and did not commit reversible error by not ordering a PSI. *See Carillo-Diaz*, 64 A.3d at 725-26.

Furthermore, to the extent that Terrell claims that the court did not permit his wife to testify, Terrell did not request that she do so, nor did the Commonwealth call her as a witness. *See* N.T. at 2, 16, 17. The court observed that she was "chomping at the bit," but counsel declined to call her, and did not object when the court stated it was not going to call her to testify because it was not going to consider an additional civil issue regarding a falsified sublease which implicated both Terrell and his wife. *Id.* at 13, 17-18. Thus, the record shows that trial court was presented with, and considered, the required sentencing factors under 42 Pa.C.S.A. § 9721(b), and Terrell's assertions to the contrary lack merit. Terrell's first argument does not merit relief.

Next, Terrell argues that "the sentence imposed was a product of bias and ill will, violating the fundamental sentencing norms in this Commonwealth." Terrell's Brief at 28. Specifically, he claims that the court's remarks were hostile and inflammatory, and require reversal of his sentence. *Id.* at 28-32. We agree.

> The sentencing decision is of paramount importance in our criminal justice system, and must be adjudicated by a fair and unbiased judge. This means, a jurist who assess[es] the case in an impartial manner, free of personal bias or interest in the outcome. Because of the tremendous discretion a judge has

- 11 -

when sentencing, a defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned. A tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings.

*Commonwealth v. Williams*, 69 A.3d 735, 744 (Pa. Super. 2013) (citations and internal quotation marks omitted). In **Williams**, this Court concluded that a sentencing court's motives and remarks exhibited bias because the trial court focused on the defendant's burglarizing Catholic institutions, assailed prior adjudications as "mistakes" for being too lenient, attempted to "sanitize" its inquiries by goading the defendant into contradicting herself, and imposed a revocation sentence that was "severe on its face" because the defendant would not be eligible for parole for thirty-one years. *Id.* at 742. As we observed:

> If the invocation of such rhetoric is relied upon to serve as the foundation of subsequent conclusions, as it clearly was in this instance, the bias necessarily affects the conclusion. The trial court's description of Appellant as being a "pathological liar" and a "classic sociopath" lacks any support in the record, and that error is not trivial in this instance. The bias it signals cannot be ignored when the trial court premises the imposition of such a severe sentence on the balance between Appellant's "extremely low potential for rehabilitation against the duty to protect the public."

*Id.* at 748. "Viewed collectively, the trial court's [statements] strike a tone of advocacy rather than dispassionate reflection. This accumulation of inappropriate remarks leads us to conclude that Appellant's sentence cannot be divorced from the appearance of bias." *Id.* at 744.

Here, Terrell objects to the following statements by the court after

hearing Officer Lam's report of Terrell's case history:

[Counsel for Terrell]:    Your Honor, I have argument, of course.

The Court:          I won't preclude you.  But this is an outrage.
        And you know what?  These are cases—is this his wife?

[Counsel for Terrell]:    Yes.

The Court:          She's going to wind up dead.

Mrs. Terrell:       Can I say something?

The Court:          No.

        She's going to wind up dead.  That's what this case is.
        And then we're all going to be sitting here saying, We
        could have prevented this if we had kept this man in jail.
        He just can't do it.  So I'll hear whatever you have to say.
        I'm not going to be deaf to it, by my God.

[The Commonwealth]:  Judge, just for the record, you heard that
        there were five arrests.  There are 23 arrests.

The Court:          Twenty-three?

[The Commonwealth]:  I just wanted to clarify.

[Counsel for Terrell]:    Your Honor, I don't believe that is the
        correct number.

[The Commonwealth]:  Eighteen and five.  I have it on the
        report.  It would be 23.  It could be 22.

The Court:          I mean, he's a crime wave.  He's not a
        criminal.  He's a crime wave.

[Counsel for Terrell]:    Your Honor, his convictions are the three
        cases that we have here today, the false ID to law
        enforcement in Delaware County, and the adjudication and
        delinquency brought on by his use of an automobile.
        That's it.

The Court:          Yeah, but he's here for firearms, firearms, and
        aggravated assault.

[Counsel for Terrell]:   No.  Resisting arrest and simple assault, your Honor.

The Court:          Okay.  All right.  Two were *nolle prossed*.  I'm sorry.

[Counsel for Terrell]:   So I still want to hear what Ms. Mitchell has to say with regard to [the alleged falsified sublease], but I'll—

[The Commonwealth]: Well, I'm not going to be calling Ms. Mitchell up.  I don't think we need to.  I think we've gotten the summary.

The Court:          Yeah, I only need a summary.  I mean, Ms. Mitchell is here.  [Mrs. Terrell] is absolutely chomping at the bit to testify because she'll probably get up here and try to exonerate this animal, which I'll hear none of.

I mean, this is horrifying.  He's a crime wave.  I'll hear anything you want to say.

N.T. at 14-16.  Upon review of this testimony, and the record as a whole, we are simply unable to agree with the trial court when it protests that its remarks did not exhibit bias but "pure hyperbole and simply manifested [the c]ourt's outrage at his repeated violations and disregard for the law."  T.C.O. at 4.

The court's statements that Terrell's wife would "end up dead" in response to learning that she was the complainant in at least two of Terrell's cases, while hyperbolic, concern Terrell's potential for rehabilitation, as well as the impact of his actions against the victim and the community.  Likewise, the comment regarding a "crime wave" pertains to Terrell's criminal history.

Moreover, the court explicitly stated that it would not preclude Terrell from argument and would "hear anything [counsel] wanted to say."  N.T. at

16.  Likewise, our review of the record shows (and Terrell does not contest) that, even with total confinement upon revocation, he received sentences on all three criminal informations well below the potential maximum sentences. At CP-51-CR-1103791-2005, the court imposed a two- to four-year sentence for charges carrying a maximum penalty of seven years.  *See* Sentencing Order, 5/10/2013; Guilty Plea Colloquy, 10/16/2006, at 1.  At CP-51-CR-02065551-2006, Terrell's revocation sentence was again two to four years for charges carrying a maximum penalty of seven years.  *See* Sentencing Order, 5/10/2013; Guilty Plea Colloquy, 10/7/2006, at 1.  Finally, at CP-51-CR-0016127-2009, Terrell's revocation sentence was one to two years with backtime on a potential two- to four-year sentence.  *See* Sentencing Order, 5/10/2013; Guilty Plea Colloquy, 9/13/2012, at 1.  Therefore, Terrell's sentence, standing alone, does not reflect any alleged bias or fixed attitude by the trial court.

It cannot be gainsaid that this appeal presents us with a different circumstance than ***Williams***, ***supra***, where the court went beyond permissible sentencing factors and focused on the religious affiliation of the victim and unsubstantiated claims about the defendant's mental health. ***Compare Williams***, 69 A.3d at 749; ***with Commonwealth v. Walls***, 926 A.2d 957, 960 (Pa. 2007) (concluding that sentencing court permissibly focused on "the principle of revenge and protection of the public").  Moreover, the bulk of the court's comments are supported by the record; generally, we might say they appear to reflect considerations which are

- 15 -

permissible factors to consider when fashioning a sentence. ***See*** 42 Pa.C.S.A. § 9721(b); ***Antidormi***, 84 A.3d at 761.

But, try as we might (and surely we have), we are unable to square the court's "animal" statement with our law. Our Supreme Court "has declined to proscribe animal imagery in penalty-phase closing arguments." ***Commonwealth v. Paddy***, 800 A.2d 294, 325 (Pa. 2002). However, it is not for the court to practice "vigorous prosecutorial advocacy," ***Commonwealth v. Miles***, 681 A.2d 1295, 1302 (Pa. 1996), but to render a sentence with "dispassionate reflection." ***Williams***, 69 A.3d at 744.

> In regarding appellant, and in addressing him, as an animal, the sentencing judge violated the most fundamental premise of our law—that all persons are to be treated equally. That does not mean that some persons will not be punished for having violated the law. . . . But no one is punished as an animal is punished.

***Commonwealth v. Spencer***, 496 A.2d 1156, 1165 (Pa. Super. 1985).

We might say that the court's statements were intemperate but not sufficiently egregious to merit relief. But we would then be faithless to our traditions. Terrell is not an animal. He is a man. Perhaps he is a very, very bad man. Perhaps he is a man whose parole should be revoked and who should draw a revocation sentence every bit as severe as this trial judge imposed upon him. But Pennsylvania law does not confuse sentencing of human beings with confinement or chastisement of animals. ***See Spencer***, 496 A.2d 1165.

This statement cannot stand: "She's absolutely chomping at the bit to testify because she'll probably get up here and try to exonerate this animal, which I'll hear none of." N.T. at 16. For our part, we will hear none of this. Pennsylvania courts impose sentences upon humans, not upon animals. Once we start confusing the two, we have begun our descent down a worrisome path. The court's statement does more than give us pause. It undermines—quite fatally—our faith in that court's impartiality and our willingness (adverted to above) to afford the court the benefit of the doubt in all other particulars.

We would blush were we to permit this to stand uncorrected. The court was no doubt frustrated and appalled. Perhaps it should have taken a breather.[2]

The matter will be returned to the trial court for a sober proceeding governed by law, not passion.

Judgment of sentence vacated. Remanded for proceedings consistent with this Memorandum.

Justice Fitzgerald concurs in the result.

Judge Bowes files a concurring and dissenting memorandum.

_____

[2] Perhaps it should do so on remand. But that is not for us to decide. *See Commonwealth v. Whitmore*, 912 A.2d 827, 834 (Pa. 2006) ("[T]he *sua sponte* removal of the trial court judge on remand for sentencing exceed[s] the authority of the Superior Court."). What we do decide is that the court's judgment is vacated and that, upon remand, the court will sentence a man, not an animal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/26/2014