**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Bruce SMITH, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 31, 2012.

Filed May 1, 2013.

Reargument Denied July 1, 2013.

Suzanne M. Swan, Public Defender and John Ciroli, Jr., Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney and Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: MUSMANNO, J., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.:

Bruce Smith ("Appellant") appeals from the September 27, 2011 judgment of sentence. After a jury convicted Appellant of criminal conspiracy,[1] fleeing or attempting to elude a police officer,[2] three counts of recklessly endangering another person ("REAP"),[3] and accident involving damage to unattended vehicle,[4],[5] the trial court sentenced Appellant to an aggregate sentence of seventeen to thirty-four years' incarceration. For the reasons that follow, we vacate the judgment of sentence, and we remand for a new sentencing hearing.

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S. § 903(a)(1).

2. 75 Pa.C.S. § 3733(a).

3. 18 Pa.C.S. § 2705.

4. 75 Pa.C.S. § 3743.

5. Initially, Appellant also was charged with criminal attempt (18 Pa.C.S. § 901), aggravated assault (18 Pa.C.S. § 2702(a)(1)), and resisting arrest (18 Pa.C.S. § 5104). The jury found Appellant not guilty of these offenses. Appellant also was charged with four summary offenses. The trial court convicted Appellant of three of those four summary offenses.

Appellant's cousin, Melvin Johnson, was murdered shortly before the events that ultimately led to Appellant's arrest in this case. Appellant, along with brothers William and Daniel Hopkins, believed that Johnson's shooter was a man named Sir John Withrow ("Withrow").

On April 3, 2010, while drinking, Appellant, the Hopkins brothers, and someone known only as "Little Hodge," became quite upset about the murder. Appellant eventually told the police that the more that the quartet talked about the murder, the more their anger escalated. The group left the house where they were drinking and went to a bar, where they continued to drink for another forty-five minutes. They left the bar and piled into a white SUV. William Hopkins was driving, Appellant was in the passenger seat, and the other two men were in the back seat. They drove to the West End section of Pittsburgh, to a location where either William Hopkins or Little Hodge claimed to have seen Withrow. Eventually, William Hopkins claimed to see Withrow sitting in a car in front of his residence. They pulled around a corner, and the Hopkins brothers exited the SUV.

Patricia Kowaluk was walking down the street in the West End with Withrow, her son, and her son's cousin. Gunshots rang out. Ms. Kowaluk was shot in the lower back. She was unable to see who fired the shots. However, a nearby resident, Benjamin Obusek, heard the shots and grabbed his own weapon. Obusek fired at the gunmen, hitting one of them in the arm.

Appellant was still in the SUV when the Hopkins brothers returned. William Hopkins was shot in the arm. Once everyone got back into the SUV, they hastened from the scene. The crew met up with another individual in a different part of the West End. This individual picked up William Hopkins and Little Hodge, and proceeded to a local hospital.

Appellant drove the SUV away from the area. A police bulletin was issued for the white SUV. The police spotted the SUV and attempted to stop the vehicle. However, Appellant did not stop. Instead, he drove up to the Mount Washington area of Pittsburgh, where he struck two vehicles. The police continued to chase the SUV until Appellant struck a police car and came to a stop. Blood samples from inside the SUV and at the scene of the shooting were submitted for DNA testing. The samples matched William Hopkins.

Based upon this evidence, Appellant was convicted of the above-delineated offenses. At all relevant times, Appellant was represented by an appointed lawyer from the Allegheny County Public Defender's Office. On September 27, 2011, before being sentenced, Appellant attempted to complain about that attorney. However, before Appellant could explain his dissatisfaction with his lawyer, the trial court interrupted Appellant and told Appellant that he should "suck it up." Notes of Testimony ("N.T."), 9/27/2011, at 2. The court further instructed Appellant to "[t]ake it up to the Superior Court. Tell them about your rights. Don't tell me. I'm not interested." *Id.* at 2–3. The trial court then proceeded to sentence Appellant to seventeen to thirty-four years in prison. The trial court also sentenced Appellant to pay $1,000 in restitution.

On October 27, 2011, Appellant filed a notice of appeal. The following day, pursuant to Pa.R.A.P. 1925(b), the trial court directed Appellant to file a concise statement of errors complained of on appeal. Appellant timely complied. On March 3, 2012, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant now raises four issues for our consideration:

1. Was [Appellant's] Pennsylvania and United States constitutional right to counsel [ ] violated when, for sentencing on September 27, 2011, the court compelled [Appellant] to use Attorney Dugan over his objection?
2. Was the imposition of the sentence of $1,000.00 restitution illegal where the court awarded restitution in a speculative amount not supported by the record, did not consider [Appellant's] ability to pay restitution and failed to direct how the restitution should be paid?
3. Did sufficient evidence exist to find [Appellant] guilty of conspiracy to commit aggravated assault?
4. Was sufficient evidence presented on the charge for damage to vehicle?

Brief for Appellant at 6.

We begin with Appellant's sufficiency claims because, if successful, they would moot the sentencing claims. *See Commonwealth v. Yanoff,* 456 Pa.Super. 222, 690 A.2d 260, 263 (1997) (the proper remedy for a successful sufficiency claim is discharge, not a new trial). "Our well-settled standard of review when evaluating a challenge to the sufficiency of the evidence mandates that we assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner." *Commonwealth v. Whitacre,* 878 A.2d 96, 99 (Pa.Super.2005). We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt. *Commonwealth v. Lambert,* 795 A.2d 1010, 1014–15 (Pa.Super.2002) (internal citations and quotation marks omitted).

> In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Id.*

■ First, Appellant argues that the evidence was insufficient to establish his guilt of criminal conspiracy beyond a reasonable doubt. Appellant maintains that no agreement existed between himself and the Hopkins brothers to assault Withrow. Appellant argues that he was merely a passenger in a car, nothing more. Thus, Appellant contends that he was merely present at the scene of a crime, and that the evidence did not demonstrate a shared intent to commit the crime. Appellant claims that no evidence was presented demonstrating that he knew, or agreed to, what the Hopkins intended to do when they left the car. In Appellant's view, to find the existence of an agreement in this case would constitute pure conjecture. "To infer Appellant's complicity on the basis of his companionship with the Hopkins brothers and riding in their car, would be tantamount to determining guilt by association." Brief for Appellant at 31. We disagree.

To sustain a conviction for criminal conspiracy, the Commonwealth must establish, beyond a reasonable doubt, that: (1) the defendant entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super.2000). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Id.*

With respect to the agreement element of conspiracy, we have explained:

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Commonwealth v. Johnson*, 719 A.2d 778, 784–85 (Pa.Super.1998) (*en banc*).

Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence presented at trial was sufficient to prove that Appellant was part of the conspiracy. That evidence demonstrated that Appellant, while imbibing alcohol, became angry while discussing his cousin's murder with the Hopkins brothers and Little Hodge. The group then proceeded to a local bar and continued drinking and discussing the murder. At one point, one of the men, either William Hopkins or Little Hodge, mentioned that he had seen Withrow, who the group believed to be Appellant's cousin's murderer, in the West End of Pittsburgh. Together, they got into the SUV and drove to that area of the city. There was no evidence presented at trial to suggest that Appellant was anything but a willing participant in the events.

Eventually, William Hopkins claimed to see Withrow sitting in a car in front of Withrow's residence. The group drove around a corner, and the Hopkins brothers exited the SUV. After approximately forty-five seconds, gunshots rang out. The Hopkins brothers returned to the vehicle, with William Hopkins suffering from a gunshot wound, and they fled the area. Eventually, the party split up and Appellant drove the SUV to Mount Washington, where the police chase later ensued.

This evidence plainly supports the elements of conspiracy. The "web of evidence" demonstrated that, by getting into the SUV and driving to the West End to search for, and exact revenge upon, Withrow, Appellant entered into an implicit agreement with the Hopkins brothers and Little Hodge. The clear intent of the conspirators was to find and, at minimum, assault Withrow. Finally, multiple overt acts occurred in support of the conspiracy, namely the joint search for Withrow and the Hopkins brothers' exit from the SUV to shoot at Withrow.

Appellant's argument that he was merely present at the scene of a crime is unavailing. It was not happenstance that he was in the SUV with these men. Appellant entered that SUV after discussing his cousin's murder for a period of time and after one of his cohorts claimed to have seen Withrow recently. The evidence clearly demonstrated that he willingly entered the vehicle to engage in a search for Withrow with his co-conspirators. In short, Appellant was not innocently inside a vehicle when his companions randomly decided to exit the vehicle and assault someone. To the contrary, the evidence proved that Appellant was an active participant.

■ Appellant next argues that the evidence was insufficient to prove him guilty of the summary offense of accident involving damage to an unattended vehicle.[6] *See* 75 Pa.C.S. § 3745. Appellant maintains that "there were no witnesses called, no report on any paint scrapes matching the SUV, no testimony from the vehicle owners on the damage caused or ability to cross examine them on the prior condition of the automobiles, there was [*sic*] only bald assertions from police that [there] were two damaged vehicles." Brief for Appellant at 33.

Section 3745 provides as follows:

The driver of any vehicle which collides with or is involved in an accident with any vehicle or other property which is unattended resulting in any damage to the other vehicle or property shall immediately stop the vehicle at the scene of the accident or as close thereto as possible and shall then and there either locate and notify the operator or owner of the damaged vehicle or other property of his name, address, information relating to financial responsibility and the registration number of the vehicle being driven or shall attach securely in a conspicuous place in or on the damaged vehicle or other property a written notice giving his name, address, information relating to financial responsibility and the registration number of the vehicle being driven and shall without unnecessary delay notify the nearest office of a duly authorized police department. Every stop shall be made without obstructing traffic more than necessary.

75 Pa.C.S. § 3745.

We agree with Appellant that the evidence supporting this charge is not substantial. However, we must view the evidence that was presented in the light most favorable to the Commonwealth. Appellant led police on a chase through the Mount Washington neighborhood of Pittsburgh. The reports emitting from the radio indicated to police officers that Appellant hit two parked cars while attempting to evade the police. Officer Tonyea Curry testified that, upon learning of the chase and its path over police radio, she proceeded to the 300 block of Edith Street. While there, he observed two damaged parked cars. Officer Curry spoke to the owners of those vehicles, who confirmed the damage to the vehicles. N.T., 6/21–23/2011, at 143–46. While this evidence was not overwhelming, it nonetheless was sufficient to support the reasonable inference that the damage was caused by Appellant during the chase. Consequently, Appellant's sufficiency claim fails.

■ We now turn to Appellant's claim that he is entitled to a new sentencing

---

6. Appellant also argues that his conviction for accident involving damage to an attended vehicle, 75 Pa.C.S. § 3743, was not supported by sufficient evidence. Brief for Appellant at

33. This issue was not raised in Appellant's Pa.R.A.P. 1925(b) statement. Consequently, it is waived. *See Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998).

hearing because the trial court violated his constitutional right to counsel. On September 27, 2011, Appellant appeared before the trial court for sentencing. At the commencement of the proceeding, the following exchange occurred:

THE COURT: So he doesn't want you anymore?

[COUNSEL]: That's true, Your Honor.

THE COURT: That's just too bad. You are still here. You didn't swear him in yet, did you?

THE CLERK: No, sir.

[APPELLANT]: Can I ask you a question, Your Honor?

THE COURT: Hold on, sir. Not yet.

(Whereupon, the oath was administered.)

THE COURT: Tell us your full name. Spell your last name.

[APPELLANT]: Bruce Smith. S-m-i-t-h.

THE COURT: How old are you?

[APPELLANT]: Twenty–Two.

THE COURT: Now you can ask your question.

[APPELLANT]: I don't feel like—I don't want him to appoint me like.

THE COURT: **Well, we all have problems every day of the week, so suck it up.**

[APPELLANT]: **That's part of my rights, though.**

THE COURT: Yeah, yeah. **Take it up to the Superior Court. Tell them about your rights. Don't tell me. I'm not interested. He is going to represent you right now because you went through a jury trial and the jury found you not guilty at three counts. He obviously did a good job because they found you not guilty at criminal attempt-homicide and two aggravated assaults.**

[APPELLANT]: I tried to tell him beforehand that I didn't want him to appoint me like.

THE COURT: **Yeah. Like I said to you, Mr. Smith, I am not interested. Take it up to the Superior Court. You tell them. Then you can have whatever lawyer you want that you can pay for.**

N.T., 9/27/2011, at 1–3 (emphasis added).

Appellant has accepted the trial court's invitation to assert his rights to this Court. Unlike the trial court, we are (indeed, we are duty bound to be) "interested" in Appellant's rights. However, we are unable to ascertain from the record whether Appellant was asserting his right to represent himself or whether he was seeking the appointment of new counsel. This was due to no fault of Appellant's. Rather, it was the trial court that prevented Appellant from asserting which right he sought to invoke. For the reasons that follow, we vacate the judgment of sentence, and remand to the trial court for a new sentencing hearing to be conducted after the proper inquiries have been made regarding Appellant's invocation of his right to counsel or his right to represent himself.

▮ The right to counsel is enshrined in both the United States and Pennsylvania Constitutions. *See* U.S. Const. Amend. VI; Pa. Const. Art. 1, § 9. Moreover, "[t]here is no disputing that there exists a constitutional right to counsel at sentencing." *Commonwealth v. Rosciolo*, 223 Pa.Super. 79, 296 A.2d 852, 853 (1972) (citing *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *Commonwealth v. Johnson*, 428 Pa. 210, 236 A.2d 805 (1968)).

Our Supreme Court recently addressed a criminal defendant's right to represent himself, and reminded us of what must occur when the defendant invokes that

right, in *Commonwealth v. El*, 602 Pa. 126, 977 A.2d 1158 (2009). Our Supreme Court explained:

A criminal defendant's right to counsel under the Sixth Amendment includes the concomitant right to waive counsel's assistance and proceed to represent oneself at criminal proceedings. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984). The right to appear *pro se* is guaranteed as long as the defendant understands the nature of his choice. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525. In Pennsylvania, Rule of Criminal Procedure 121 sets out a framework for inquiry into a defendant's request for self-representation. Pa.R.Crim.P. 121. Where a defendant knowingly, voluntarily, and intelligently seeks to waive his right to counsel, the trial court, in keeping with *Faretta*, must allow the individual to proceed *pro se*. *See Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1335 (1995) (holding that a defendant must demonstrate a knowing waiver under *Faretta*). *See also Commonwealth v. McDonough*, 571 Pa. 232, 812 A.2d 504, 508 (2002) (concluding that *Faretta* requires an on-the-record colloquy in satisfaction of Pa.R.Crim.P. 121, which colloquy may be conducted by the court, the prosecutor, or defense counsel.)

The right to waive counsel's assistance and continue *pro se* is not automatic however. Rather, only timely and clear requests trigger an inquiry into whether the right is being asserted knowingly and voluntarily. *See Faretta*, 422 U.S. at 836, 95 S.Ct. 2525 (noting that the defendant sought to represent himself by way of a clear and unequivocal declaration asserted weeks before trial). *See also Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81, 82 (1998) (holding that a Rule 121 colloquy is required only in response to a timely and unequivocal invocation of the right to proceed *pro se* ). Thus, the law is well established that "in order to invoke the right of self-representation, the request to proceed *pro se* must be made timely and not for purposes of delay and must be clear and unequivocal." *Commonwealth v. Davido*, 582 Pa. 52, 868 A.2d 431, 438 (2005), *cert. denied*, 546 U.S. 1020, 126 S.Ct. 660, 163 L.Ed.2d 534 (2005).

*El*, 977 A.2d at 1162–63 (footnotes omitted). To the extent that Appellant sought to invoke his right to represent himself, the trial court denied Appellant any opportunity actually to assert the right, nor did the trial court examine Appellant to determine whether the invocation of that right was knowing, intelligent, or voluntary. Therefore, even if it were clear that this was Appellant's desire, the trial court's actions foreclosed our ability to review this claim.

To the extent that Appellant sought the appointment of new counsel, we note that "the right to appointed counsel does not include the right to counsel of the defendant's choice." *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 709 (1998). Rather, the decision to appoint different counsel to a requesting defendant lies within the discretion of the trial court. *Commonwealth v. Grazier*, 391 Pa.Super. 202, 570 A.2d 1054, 1055 (1990). Before new counsel is appointed, "a defendant must show irreconcilable differences between himself and his court-appointed counsel before a trial court will be reversed for abuse of discretion in refusing to appoint new counsel." *Id.; see also* Pa.R.Crim.P. 122(C) ("A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons."). Again, our ability to review whether the

trial court abused its discretion has been foreclosed by the trial court's unwillingness to afford Appellant the opportunity to offer whatever reasons he may have had to seek the appointment of new counsel.

In its Pa.R.A.P. 1925(a) opinion, the trial court faults Appellant for not asking to represent himself, and claims that "[Appellant] just seemed to not want [his particular lawyer]." Trial Court Opinion ("T.C.O."), 3/3/2012, at 4. The trial court also cites the well-established principles that an indigent defendant is not entitled to free counsel of his choice; that appointed counsel may only be rejected for "good cause shown"; and that a "mere dissatisfaction" with appointed counsel does not constitute good cause. *Id.* (citing *Commonwealth v. Knapp,* 374 Pa.Super. 160, 542 A.2d 546, 549 (1988)). However, the trouble lies in the fact that the trial court makes no attempt to apply these general principles to the record in this particular case. The inherent and obvious problem with the trial court faulting Appellant for these putative deficiencies is that every time Appellant tried to explain himself, he was instructed by the trial court to "suck it up" or told that the trial court was "not interested" and to "tell [the Superior Court] about your rights." N.T., 9/27/2011, at 2–3. The trial court now seeks to penalize Appellant for not doing what the trial court itself prevented Appellant from doing. We simply cannot accept the trial court's faulty logic.

The record in this case prevents us from ascertaining whether Appellant sought to invoke his right to represent himself or whether he sought the appointment of new counsel. Consequently, we are unable even to determine the proper standard of review to apply. Therefore, we vacate the judgment of sentence and remand to the trial court for a new sentencing hearing. On remand, the trial court shall permit Appellant to clarify whether he seeks the appointment of new counsel or whether he desires to represent himself. The trial court must then engage in the appropriate inquiry as prescribed by our law and as detailed above, and must render an informed decision based upon the application of the legal principles to the case at hand. Only after due inquiry, and the appointment of new counsel if deemed appropriate, shall Appellant be resentenced.[7]

On remand, and in the future, we remind the trial court that Canon 3(A)(1) of the Code of Judicial Conduct requires judges to "be faithful to the law." Moreover, Canon 3(A)(3) provides that, "Judges should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacity. . . ." Our courts are forums for the assertion and vindication of rights. The integrity and independence of our courts mandate that those who seek to assert those rights should not be told to "suck it up." Our trial courts should not indicate, expressly or implicitly, that they are "not interested" in a person's rights,

---

7. In his final issue, Appellant challenges the legality of the trial court's restitution award. As part of his sentence, Appellant was ordered to pay restitution of $1,000. Appellant challenges this aspect of his sentence on three separate bases: the trial court (1) did not state the reasons on the record for imposing this amount; (2) did not inquire into Appellant's ability to pay the amount; and (3) did not obtain any evidence on the record to support this specific amount. Because we vacate the judgment of sentence and remand this case for a new sentencing hearing, this issue is moot. However, we note that Appellant's third argument finds considerable support in our precedent. *See Commonwealth v. Boone,* 862 A.2d 639, 643 (Pa.Super.2004) ("The sum [of restitution] may not be speculative or excessive."). Although this issue is now moot, we nonetheless urge the trial court to consider this law upon resentencing.

nor should they instruct defendants to "tell the [Superior Court] about your rights." N.T., 9/27/2011, at 2–3. Those who look to our courts to invoke a particular right, even if incorrectly, should be met with patience, and with fidelity to the procedures that our law requires, not with intemperance. This fundamental precept derives not only from the Canons of Judicial Conduct, but also from our society's bedrock precept that the courts are forums of integrity, justice, and equity.

Judgment of sentence vacated. Remand for new sentencing hearing. Jurisdiction relinquished. Judgement Entered.