J-A17025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GREGORY MAXWELL | |
| Appellant | No. 2657 EDA 2013 |

Appeal from the Judgment of Sentence August 23, 2013
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000560-2013

BEFORE:  GANTMAN, P.J., PANELLA, J., and STABILE, J.

MEMORANDUM BY PANELLA, J.                **FILED DECEMBER 15, 2014**

Appellant, Gregory Maxwell, appeals from the judgment of sentence entered August 23, 2013, by the Honorable Jacqueline C. Cody, Court of Common Pleas of Chester County.  We affirm.

The trial court summarized the facts adduced at the suppression hearing as follows.

> On January 30, 2013[,] at approximately noon, Trooper Andrew Helms was on duty in a marked police car traveling northbound on SR 202 in West Goshen, Chester County.  SR 202 is a four-lane, limited access highway[1] with a grassy median between north and southbound lanes.  Trooper Helms observed a white Cadillac Escalade proceeding south on SR 202 and make

---

[1] In his brief, Maxwell contests the suppression court's description of the roadway as a "limited access highway."  Appellant's Brief at 19.  As this issue of fact has no bearing upon our disposition of this case, we need not address the alleged discrepancy further.

a u-turn, crossing the center median at a gravel ramp marked "No U-Turn." Trooper Helms identified [Maxwell] as the driver of the white Escalade.

After observing [Maxwell] make the illegal u-turn, Trooper Helms followed the vehicle, activated his sirens and lights and pulled the vehicle over. Trooper Helms approached the vehicle, identified himself as a police officer and asked [Maxwell] for his license, registration and insurance. [Maxwell] handed Trooper Helms a New York state driver's license and a Pennsylvania identification card. Trooper Helms ran this information through NCIC and determined that [Maxwell's] driver's license was suspended and the Florida registration was expired. Trooper Helms also determined there was an active warrant for [Maxwell's] arrest relating to traffic violations in Magisterial District Justice Darlington's court.

Upon approaching the vehicle, Trooper Helms smelled an odor of marijuana. Trooper Helms looked into the driver's side window of the vehicle and observed small bits of a green leaf-like substance in and around the center console and the glove compartment, which he suspected to be marijuana.

Trooper Helms then took [Maxwell] into custody for the traffic warrants. [Maxwell] asked for his jacket, briefcase and cell phones from his vehicle when he was taken into custody. Trooper Helms searched [Maxwell's] jacket and briefcase incident to [Maxwell's] being taken into custody. Trooper Helms found cash in [Maxwell's] pocket, cash in his briefcase and three cell phones.

Trooper Helms then conducted an inventory search of [Maxwell's] automobile pursuant to state police procedure and policy, for his own protection and to search for and secure any valuables that may be in the vehicle. Trooper Helms observed and collected cash, a small black electronic scale containing suspected marijuana residue, and large plastic Ziplock [sic] baggies from the center console. Trooper Helms further observed what he suspected to be marijuana residue around the glove compartment.

After completing the inventory search of [Maxwell's] vehicle, Trooper Helms asked for [Maxwell's] consent to search the remainder of the vehicle. Trooper Helms believed that there may be additional drugs and cash in the back seat and rear of the vehicle based upon what was found during the inventory

search. [Maxwell] declined to give his consent for a further search of the vehicle. [Maxwell's] vehicle was then towed to the Pennsylvania State Police Barracks at Embreeville and [Maxwell] was transported to [MDJ] Darlington in order to dispose of the outstanding traffic warrants.

Trial Court Opinion, 1/28/14 at 9-11. A subsequent search of Maxwell's vehicle pursuant to the issuance of a search warrant yielded additional marijuana, large amounts of United States currency, several cell phones and a black machete. *See id*. at 15.

Maxwell was subsequently charged with numerous drug-related offenses. Initially, Maxwell retained private counsel. Private counsel moved to withdraw her representation, which the trial court granted. Maxwell then filed a *pro se* Writ of Habeas Corpus Motion to Suppress/Dismiss. The trial court appointed Stephen F. Delano, Esquire, of the Chester County Public Defender's Office as counsel. Maxwell filed a *pro se* Motion for Change of Counsel. On July 18, 2013, a negotiated guilty plea hearing was held, at which time Maxwell indicated that he did not wish to enter a guilty plea. The trial court granted a brief continuance to afford Maxwell time to discuss the matter with his attorney. Maxwell filed a *pro se* Motion for Court-Appointed Counsel. The trial court denied Maxwell's motions on August 8, 2013.

At the commencement of trial, on August 20, 2012, Maxwell indicated to the court that he wished to proceed *pro se*. Following a thorough waiver of counsel colloquy, the trial court permitted Maxwell to proceed *pro se* and

- 3 -

appointed Attorney Delano as standby counsel.[2] **See** N.T., Trial, 8/20/13 at 7-15.

A suppression hearing was conducted and the trial court denied Maxwell's suppression motion. Following a jury trial, Maxwell was convicted of possession with intent to deliver a controlled substance (marijuana), possession of a controlled substance (marijuana) and possession of drug paraphernalia.[3] Immediately thereafter, Maxwell was sentenced to time served to 23 months' incarceration, plus three years' probation, and was immediately paroled. This timely counseled appeal followed.

On appeal, Maxwell raises the following issues for our review.

1. Whether the [c]ourt erred in denying appellant's Motion to be Appointed Legal Counsel.

2. Whether the [c]ourt erred in appointing Stephen F. Delano Esq. as stand-by counsel.

3. Whether the [c]ourt erred in denying appellant's Motion to Suppress.

Appellant's Brief at 4.

Preliminarily, we note that Maxwell's argument that the trial court denied his *pro se* motion to appoint new counsel is a red herring. At the time Maxwell filed his motion to appoint counsel, the trial court had already appointed Stephen F. Delano, Esquire, to represent him. Maxwell's

---

[2] A written waiver of counsel colloquy was filed August 21, 2013.

[3] 35 P.S. §§ 780-113(a)(30), (16) and (32).

argument is more properly characterized as an objection to the trial court's refusal to appoint *new* counsel. In this regard, we note that,

> the right to appointed counsel does not include the right to counsel of the defendant's choice. ***Commonwealth v. Albrecht***, 554 Pa. 31, 720 A.2d 693, 709 (1998). Rather, the decision to appoint different counsel to a requesting defendant lies within the discretion of the trial court. ***Commonwealth v. Grazier***, 391 Pa.Super. 202, 570 A.2d 1054, 1055 (1990). Before new counsel is appointed, "a defendant must show irreconcilable differences between himself and his court-appointed counsel before a trial court will be reversed for abuse of discretion in refusing to appoint new counsel." ***Id.***; ***see also*** Pa.R.Crim.P. 122(C) ("A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons."). Again, our ability to review whether the trial court abused its discretion has been foreclosed by the trial court's unwillingness to afford Appellant the opportunity to offer whatever reasons he may have had to seek the appointment of new counsel.

***Commonwealth v. Smith***, 69 A.3d 259, 266-267 (Pa. Super. 2013) (some internal quotation marks omitted), ***appeal denied***, 83 A.3d 168 (Pa. 2013).

In its Rule 1925(a) opinion, the trial court explained its reasons for denying Maxwell's motion as follows.

> [Maxwell's] first Motion for Change of Counsel was filed July 15, 2013, two days before [Maxwell] met Mr. Delano. In the July 15, 2013 Motion for Change of Counsel, [Maxwell] complains about Assistant Public Defender Loreen Kemps, with whom he met on March 29, 2013. Because a new Assistant Public Defender had already been assigned to [Maxwell's] case, [the court] did not issue an Order regarding [the] Motion for Change of Counsel dated July 15, 2013.

> [Maxwell] filed a second Motion for Change of Court Appointed Counsel on July 30, 2013. In this Motion, [Maxwell] argued that Mr. Delano did not represent his best interests because he ignored various *pro se* motions filed by [Maxwell] and insisted [Maxwell] entered a guilty plea.

> [Maxwell's] complaints about his attorney are inconsistent with Mr. Delano's words and actions on the record [at the guilty plea hearing conducted] on July 18, 2013. At that time, Mr. Delano explained the nature of work and hours of time spent with [Maxwell]. Upon [Maxwell's] decision not to enter a negotiated plea agreement, Mr. Delano requested time to review [Maxwell's] pro se filings and to file appropriate pretrial motions. There is no indication of any insistence by counsel that [Maxwell] enter a plea or that counsel was unwilling to pursue [Maxwell's] *pro se* filings and proceed to trial. [The trial court] also considered the fact that this was the third attorney to represent [Maxwell] in this matter, and that [Maxwell] had lodged similar complaints about all three attorneys. Accordingly, [the court] found no substantial basis for appointment of new court-appointed counsel.

Trial Court Opinion, 1/28/14 at 4-5.

We find the trial court's reasoning to be sound. Maxwell's claim that "irreconcilable differences" "resulted in a complete and irreversible breakdown in the relationship between Appellant and counsel" is simply unsupported by the record. While it is obvious that Maxwell at some point became disenchanted with appointed counsel, he fails to substantiate his allegations that irreconcilable differences existed of such a magnitude that would warrant the appointment of new counsel. To the contrary, the record suggests that trial counsel was willing and able to proceed to trial and address Maxwell's *pro se* motions. As Maxwell has failed to establish "substantial reasons" for the appointment of new counsel, we find no abuse of discretion in the trial court's denial of Maxwell's motion.

To the extent that Maxwell contends that the trial court erred when it appointed Attorney Delano as standby counsel, he advances no new argument in support of his claim. We note that "[w]hen a defendant elects

to proceed at trial *pro se*, the defendant—and not standby counsel—is in fact counsel of record and is responsible for trying the case." ***Commonwealth v. Spotz***, 47 A.3d 63, 83 (Pa. 2012). Although Maxwell claims that he was "loathe to consult with [Attorney Delano] and take advice from him as to the merits of his case[,]" we are satisfied that Attorney Delano was familiar with the facts and legal issues of Maxwell's case and was able and willing to offer assistance if requested. Maxwell notably does not allege that he was in any way prejudiced by the trial court's appointment of Attorney Delano as standby counsel. Accordingly, we do not find the court's decision to be an abuse of discretion.

Lastly, Maxwell argues that the trial court erred when it denied his motion to suppress evidence. We review the denial of a motion to suppress physical evidence as follows.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> Further, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Houck*, \_\_\_ A.3d \_\_\_, \_\_\_, 2014 WL 4783552 at *10 (Pa. Super., filed Sept. 26, 2014) (internal citations and quotation marks omitted).

Maxwell argues that Trooper Helm's inventory search of his vehicle was improper, as the vehicle did not need to be towed for public safety pursuant to 75 Pa.C.S. § 6309.2, **Immobilization, towing and storage of vehicle for driving without operating privileges or registration**.[4] Maxwell additionally contends that because the inventory search was allegedly improper, so too was the search warrant issued upon the items discovered during the illegal inventory search. *See* Appellant's Brief at 17-20. In light of the Pennsylvania Supreme Court's recent decision in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), we find that Trooper

---

[4] Section 6309.2 states, in pertinent part, that

> [i]f a person operates a motor vehicle or combination on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer shall immobilize the vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

75 Pa.C.S. § 6309.2(a)(1).

Helm had probable cause to conduct a warrantless search of Maxwell's vehicle, irrespective of the allegedly improper inventory search.

In **Gary**, our Supreme Court held that "with regard to the warrantless search of a motor vehicle that is supported by probable cause, Article I, Section 8 of the Pennsylvania Constitution affords no greater protection than the Fourth Amendment to the United States Constitution." 91 A.3d at 124. Thus, our Supreme Court "[a]ccordingly adopted the federal automobile exception to the warrant requirement, which allows police officers to search a motor vehicle when there is probable cause to do so and does not require any exigency beyond the inherent mobility of a motor vehicle." **Id**. at 104.

Trooper Helms undoubtedly had probable cause to search Maxwell's vehicle. Trooper Helms smelled an odor of marijuana emanating from Maxwell's vehicle. He also observed, in plain view, small bits of a green leaf-like substance around the console and glove box, which he believed to be marijuana. This observation was sufficient to establish probable cause. **See Commonwealth v. Liddie**, 21 A.3d 229, 236 (Pa. Super. 2011) (observation of marijuana in appellant's vehicle created probable cause to believe that a crime had been committed and that evidence pertaining to the crime was present in appellant's vehicle). Under the principle announced in **Gary**, this alone was sufficient to establish probable cause to search Maxwell's vehicle.

Accordingly, we affirm the order denying Maxwell's motion to suppress evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2014