J-A21023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DASAAHN MCMILLAN | : | |
| | : | |
| Appellant | : | No. 2082 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004506-2016

BEFORE:  LAZARUS, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 8, 2020**

Appellant, Dasaahn McMillan, appeals from the Judgment of Sentence entered on June 17, 2019, after a jury convicted him of one count of Criminal Conspiracy graded as a felony of the first degree.[1]  After careful review, we affirm.

On the morning of January 22, 2016, following two altercations with Michael Wilson in center city Philadelphia, Appellant travelled to the southwest area of the city, where he knew Wilson would later be.  While traveling, Appellant repeatedly spoke by cellphone with Kareem Briscoe, who left the Germantown section of the city to meet Appellant.

Around 2 p.m., Wilson was talking with two companions near the intersection of 62nd and Reedland in southwest Philadelphia.  Briscoe and

_____

[1] 18 Pa.C.S. § 903(a).

another man emerged from an alley and began shooting at Wilson, who suffered two gunshot wounds in his back. The two men then fled the area. Shortly after the shooting, Appellant again spoke with Briscoe by phone. Police would later seize one of the firearms used in the shooting from Briscoe's home.

Police filed a written complaint against Appellant on March 1, 2016, and ultimately charged him with numerous offenses related to the attack, including Attempted Murder, Aggravated Assault, and Conspiracy.[2]

On October 9, 2018, Appellant litigated a Motion to Dismiss the charges pursuant to Pa.R.Crim.P. 600(A). Appellant asserted that a delay "from December 4, 2017 until May 21, 2108 [sic] should not be considered defense time as the government released discovery on the eve of trial forcing a continuance." Motion to Dismiss, 10/5/18, at 3 (unpaginated). Following a hearing, the trial court denied the Motion, and a jury trial commenced.

At trial, the Commonwealth introduced evidence of Appellant's altercations with Wilson, Appellant's relationship with Briscoe, their

_____

[2] The Commonwealth charged Appellant with three counts of Criminal Attempt (Murder), three counts of Aggravated Assault, one count each of Conspiracy (Murder, Assault), Possession of Firearm Prohibited, Firearms Not to be Carried Without a License, Carrying Firearms on Public Streets in Philadelphia, and Possessing Instruments of Crime. *See* 18 Pa.C.S. §§ 901(a), 2702(a)(1), 903(c), 6105(a)(1), 6106(a)(1), 6108, 907(a), respectively; *see also* Grand Jury Indictment, 4/29/16, at 2 (accusing Appellant of Conspiracy to commit Murder); Information, 5/23/16 (charging Appellant with Conspiracy to commit Murder and Assault by shooting at another person).

communications both before and after the shooting, and how they travelled from different areas of the city to converge at the shooting. In addition, the Commonwealth introduced security camera video from a local store that recorded the shooting and depicted two assailants.[3] Finally, the Commonwealth presented ballistics evidence demonstrating that shell casings recovered from the scene came from a firearm seized from Briscoe's home. After deliberating, the jury convicted Appellant of Conspiracy and acquitted him of all other charges.[4]

At sentencing, on June 17, 2019, Appellant argued a Motion to Set Grade of Conspiracy in which he sought a reduction in the grading of his conviction from a felony of the first degree to a misdemeanor of the first degree. The trial court denied this Motion and sentenced Appellant to six to twelve years of incarceration.

_____

[3] The police secured a statement from an eyewitness, Leonard Brown, identifying Appellant as one of the shooters; however, at trial, Brown recanted his prior statement as well as his grand jury testimony identifying Appellant. *See* N.T. Trial, 10/11/18, at 44, 46-51, 70, 84, 89. The Commonwealth introduced these items as evidence of Brown's prior inconsistent statements but agreed to their admission for impeachment purposes only, not substantive proof. *See* N.T. Trial, 10/17/18, at 17 (instructing the jury that it may consider evidence of a prior inconsistent statement, which identified Appellant as one of the shooters, for impeachment purposes only, not substantive proof).

[4] The Commonwealth *nolle prossed* the charge for Possession of Firearm Prohibited.

Appellant timely appealed and filed a Pa.R.A.P. 1925(b) Statement. The trial court issued a responsive Opinion.

Appellant raises the following issues:

1. [Whether] the trial court abuse[d] its discretion by finding that Appellant's right to a speedy trial was not violated after the government's untimely production of thousands of pages of discovery caused delay resulting in Appellant's trial commencing 699 days after the complaint was filed[;]

2. [Whether] the evidence [was] insufficient to identify Appellant[; and]

3. [Whether] the trial court abuse[d] its discretion by erroneously sentencing Appellant for [C]onspiracy to commit felony [A]ggravated [A]ssault when the jury's verdict was to [C]onspiracy generally without a specific finding of the object of the conspiracy or the over[t] act[.]

Appellant's Br. at 5 (suggested answers omitted).

## **Rule 600 Violation**

In his first issue, Appellant asserts a Rule 600 violation, contending that his trial did not commence in timely fashion. **See** Appellant's Br. at 25. There were numerous delays in bringing Appellant to trial.[5] Relevant to his appeal, Appellant faults the Commonwealth for an alleged untimely production of discovery, asserting that this forced Appellant to request a continuance from December 4, 2017, until May 21, 2018 (the "December continuance"). **See** **id.**; **see also** Motion to Dismiss at 3 (unpaginated). According to Appellant, the court should not have excluded this 168-day delay from its computation

---

[5] The Commonwealth filed charges on March 1, 2016; trial commenced on October 9, 2018. Thus, by our calculation, trial commenced 952 days after the Commonwealth filed charges.

- 4 -

of when Appellant's trial should have commenced. ***See generally*** Appellant's Br. at 25-37.

We review a trial court's decision to deny a defendant's Rule 600 motion for an abuse of discretion. ***Commonwealth v. Holt***, 175 A.3d 1014, 1018 (Pa. Super. 2017). Our scope of review is limited to the evidence presented at the Rule 600 hearing and the findings of the trial court. ***Commonwealth v. Edwards***, 595 A.2d 52, 53 (Pa. 1991). We review the facts in the light most favorable to the prevailing party. ***Id.***

Rule 600 provides in relevant part that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). This is the mechanical run date. ***See Commonwealth v. Moore***, 214 A.3d 244, 248 (Pa. Super. 2019).

"[A] violation of Rule 600 does not automatically entitle a defendant to a discharge." ***Commonwealth v. Goldman***, 70 A.3d 874, 879 (Pa. Super. 2013) (citation omitted). To determine whether dismissal is appropriate, the trial court must calculate an adjusted run date. ***Id.*** at 879. "The adjusted run date is calculated by adding to the mechanical run date . . . both excludable time and excusable delay." ***Moore***, 214 A.3d at 248 (citations omitted). "'Excludable time' is classified as periods of delay caused by the defendant. 'Excusable delay' occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due

- 5 -

diligence." *Id.* at 248-49 (citations omitted); *see also* Pa.R.Crim.P. 600(C)(1).

In this case, following a hearing and after considering the evidence presented, the trial court did not credit Appellant's argument that the Commonwealth had forced the December continuance and found rather that Appellant was responsible for the delay. *See* N.T. Motion Hearing, 10/9/18, at 14-23; Trial Ct. Op., 11/7/19, at 6. Based on this finding, the court determined that the delay was excludable and that no Rule 600 violation had occurred. *See* Trial Ct. Op. at 6-7.

Viewing the facts in the light most favorable to the Commonwealth as the prevailing party, we conclude that there was no violation of Appellant's right to a speedy trial. At his hearing, Appellant introduced into evidence the Criminal Docket, which indicates that Appellant requested the December continuance in order to investigate his case. *See* Docket Entry # 55, 12/4/17 ("Defense Request for Continuance for Further Investigation"). The entry also indicates that the Commonwealth was ready to proceed at this time. *Id.* This is the only evidence of record.

Notwithstanding his current argument, Appellant did not challenge this docket entry at the time, nor did he assert that the Commonwealth had "forced" him to request a continuance because of its untimely production of discovery. In fact, the Docket reveals that **two months earlier**, on October 4, 2017, the Commonwealth had passed along discovery but that no new trial

date was required.  ***See*** Docket Entry # 51, 10/4/17 ("discovery passed at bar of court . . . [t]rial date to remain").[6]

Further, during the ensuing continuance, Appellant filed a Notice of Alibi Defense, which supports the earlier docket entry that Appellant had requested the delay in order to investigate possible defenses for his upcoming trial.  ***See*** Docket Entry # 71, 4/12/18 ("Notice of Alibi Defense").  For these reasons, we conclude that the trial court properly found that the December continuance was excludable time to be added to Appellant's mechanical run date.

As noted *supra*, the Commonwealth filed a written complaint against Appellant on March 1, 2016.  Therefore, Appellant's mechanical run date was March 1, 2017.  The total amount of excludable time and excusable delay was 706 days.[7]  Adding this to the mechanical run date, Appellant's adjusted run date was February 5, 2019.  Appellant's trial commenced on October 9, 2018, well before the adjusted run date.  Accordingly, there was no Rule 600

---

[6] Appellant does not support his current assertion that the Commonwealth produced additional discovery closer to trial with evidence of record.  ***See*** Appellant's Br. at 33.

[7] The total excludable time and excusable delay is as follows:

- 6/14/16 – 12/4/17 = 538 days
    - excusable delay to accommodate court scheduling and excludable by joint request for continuance (not challenged by Appellant)
- 12/4/17 – 5/21/18 = 168 days
    - excludable time as defense continuance

All other delays were caused by the Commonwealth.

violation, and we discern no abuse of discretion in the trial court's decision to deny Appellant's Motion to Dismiss. Appellant's claim for relief fails. [8]

**Sufficiency of the Evidence**

In his second issue, Appellant contends that the evidence was insufficient to support his conviction. *See* Appellant's Br. at 37-54. In support of this assertion, Appellant cites to the testimony of eyewitness, Leonard Brown. At trial, Brown recanted his prior statements identifying Appellant as one of the shooters.[9] Thus, according to Appellant, the Commonwealth lacked sufficient evidence to identify him as the perpetrator. *Id.* at 50.

It is well-settled that to preserve a challenge to the sufficiency of the evidence in a criminal case, the appellant must specify in his Pa.R.A.P. 1925(b) statement how the Commonwealth's evidence did not establish his alleged crimes. *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008). To do so, an appellant's Rule 1925(b) statement must delineate "the element or elements upon which the evidence was insufficient." *Commonwealth v. Carr*, 227 A.3d 11, 18 (Pa. Super. 2020) (citation

---

[8] Initially, Appellant disputes the trial court's finding that the December continuance was excludable as a delay caused by Appellant. *See* Appellant's Br. at 23, 25, 33; *see also* Motion to Dismiss at 3. In alternative arguments that permeate his brief, Appellant asserts that the Commonwealth was not duly diligent in bringing Appellant to trial, thus asserting also that the December continuance was not an excusable delay. *See, e.g.*, Appellant's Br. at 33-34. Because the record supports the trial court's finding that this delay was excludable, we need not consider Appellant's alternative arguments.

[9] *See supra* at n.3 (explaining that the trial court admitted Brown's prior inconsistent statements for impeachment purposes only).

omitted); *see also Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015). An appellant may also challenge the sufficiency of the Commonwealth's evidence establishing that he was the perpetrator. *See Commonwealth v. Cain*, 906 A.2d 1242, 1244 (Pa. Super. 2006); *Commonwealth v. Pereria*, 280 A.2d 623, 624 (Pa. Super. 1971) ("Of course, the identity of the defendant must be proved beyond a reasonable doubt, the same as any other essential element in a criminal prosecution.")

Here, the trial court concluded that Appellant waived appellate review of the sufficiency of the evidence because "he failed to identify the elements of the crime of conspiracy . . . [that] the Commonwealth's evidence failed to prove beyond a reasonable doubt." Trial Ct. Op. at 8-9.

After review, we agree with the trial court that Appellant has waived this claim. Appellant failed to delineate the specific elements of Conspiracy and failed to notify the trial court how the Commonwealth's evidence failed to establish those elements. In addition, Appellant did not preserve a claim challenging the sufficiency of the Commonwealth's identification evidence. Rather, Appellant broadly stated that "[t]he evidence was insufficient as a matter of law to convict [Appellant] beyond a reasonable doubt." Pa.R.A.P. 1925(b) Statement, 8/9/19, at ¶ 5. Thus, because he has failed to preserve properly a sufficiency challenge, Appellant waived this claim.[10]

_____

[10] Even if the claim were not waived, we would conclude that Appellant's sufficiency challenge lacks merit. Appellant argues that because the

## Legality of Sentence

In his third issue, Appellant asserts that the trial court erred when it sentenced him for Conspiracy to commit Aggravated Assault, graded as a felony. Appellant's Br. at 55. According to Appellant, because the jury's verdict did not specify the criminal object of the conspiracy, its verdict was

_____

Commonwealth never introduced substantive evidence identifying him as one of the shooters, a jury could not find him guilty of Conspiracy. **See** Appellant's Br. at 50. This argument is legally incorrect and not persuasive. Appellant's singular focus on eyewitness Brown's testimony relevant to the shooting misses the mark because he has failed to account for the substantial evidence that Appellant engaged in a conspiracy that culminated with Briscoe (and another man) shooting Michael Wilson.

In our *de novo* review, we consider the evidence adduced at trial, and all reasonable inferences derived therefrom, in the light most favorable to the Commonwealth as the prevailing party. **Commonwealth v. Robinson**, 128 A.3d 261, 264 (Pa. Super. 2015) (*en banc*). To sustain a conviction for a criminal conspiracy, the Commonwealth must establish that the defendant entered into an agreement with another person to commit or aid in an unlawful act, with a shared criminal intent, and that an overt act was done in furtherance of the conspiracy. **Commonwealth v. Smith**, 69 A.3d 259, 263 (Pa. Super. 2013). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." **Id.** (citation omitted).

Here, the evidence established that following two altercations with Wilson, Appellant coordinated a rendezvous with Briscoe at a location where he knew Wilson would be; upon arrival, Briscoe and another man shot Wilson twice in the back, then fled the scene. Importantly, Appellant does **not** challenge this evidence. **See generally** Appellant's Br. at 37-54. Based on this evidence, a jury could reasonably infer that Appellant, seeking revenge for the prior altercations, entered into a criminal agreement with Briscoe, who then committed the overt act of shooting Wilson in the back. Thus, viewing this evidence in the light most favorable to the Commonwealth as the prevailing party, the evidence was sufficient to establish that Appellant engaged in a criminal conspiracy to assault and murder Wilson.

"ambiguous." *Id.* Thus, Appellant concludes, the trial court should have graded this offense as a misdemeanor. *Id.*

"The proper grading of a criminal offense is an issue of statutory interpretation and implicates the legality of the sentence imposed." *Commonwealth v. Felder*, 75 A.3d 513, 515 (Pa. Super. 2013) (citation omitted).[11] Our standard of review is *de novo*, and the scope of our review is plenary. *Id.*

Generally, pursuant to 18 Pa.C.S. § 905(a), the offense of Conspiracy is "the same grade and degree as the most serious offense [that] . . . is an object of the conspiracy." However, "in the absence of clear evidence of the jury's intent to the contrary, a general conspiracy verdict must be resolved in favor of the defendant, and may be construed only as a conviction of conspiracy to commit the least serious underlying offense for which the jury could properly have found the defendant to have conspired to commit." *Commonwealth v. Riley*, 811 A.2d 610, 620 (Pa. Super. 2002). To ascertain the jury's intent, a reviewing court may examine the entire record, "including the evidence, the criminal information, and the jury instructions[.]" *Commonwealth v. Jacobs*, 39 A.3d 977, 985 (Pa. 2012).

In addressing Appellant's claim, the trial court reasoned as follows:

[T]he [Grand Jury] Indictment describing the conspiracy was not ambiguous because it indicated that the object of the conspiracy

---

[11] Appellant erroneously asserts that he challenges the discretionary aspects of his sentence. *See* Appellant's Br. at 55-57. This error does not hinder our review.

was a single crime, namely murder, a felony of the first degree. In addition, a review of the evidence relating to the conspiracy charge presented at trial directly related solely to the attempted murder and aggravated assault charges and no other. At no point did the Commonwealth argue, even by innuendo, that the conspiracy involved the other charges. Given this, the jury's verdict was not ambiguous[,] and this [c]ourt did not err by denying [A]ppellant's . . . request that the conspiracy be graded as a misdemeanor for purposes of sentencing.

Trial Ct. Op. at 8

Following our *de novo* review of the record, including the Commonwealth's charges, the evidence presented at trial, and the jury instructions, we agree with the trial court's analysis. The jury's intent is ascertainable, and the verdict is not ambiguous.

In the Grand Jury Indictment and criminal Information, the Commonwealth alleged that Appellant conspired with Kareem Briscoe to assault and murder the victim, Michael Wilson. **See** Grand Jury Indictment at 2; Information at Count 3. The evidence adduced at trial was uniformly consistent with the Commonwealth's allegation. **See, e.g.**, N.T. Trial, 10/11/18 at 43 (video evidence of Briscoe and another man shooting Wilson); N.T. Trial, 10/15/18, at 66-78 (testimony establishing that Appellant was acquainted with his co-conspirator Briscoe and that they conversed via cellphone both before and after the shooting); 171-72 (expert testimony relying on ballistics evidence to establish that .40 caliber cartridge cases discovered at the scene of the shooting were fired from the firearm seized from Briscoe's home); N.T. Trial, 10/16/18, at 23-28 (expert testimony relying

- 12 -

on cellphone tracking data to establish that Appellant and Briscoe travelled from different parts of the city to meet in the location of the shooting).

Finally, the trial court's instructions to the jury, taken as a whole, properly informed their deliberations. Prior to its Conspiracy instruction, the trial court defined for the jury Criminal Attempt (Murder) and Aggravated Assault. N.T. Trial, 10/17/18, at 21-24. Following its Conspiracy instruction, the trial court defined Possessing Instruments of Crime and informed the jury that Appellant allegedly possessed a gun intending to use it criminally in an "attempted homicide or aggravated assault." *Id.* at 27-28.

This record constitutes clear evidence that the jury intended to convict Appellant of Conspiracy to commit Aggravated Assault and/or Murder, both felonies of the first degree. Thus, the trial court did not err in denying Appellant's request to grade Appellant's Conspiracy conviction as a misdemeanor for sentencing purposes.[12]

## **Conclusion**

After careful review, we conclude that Appellant is entitled to no relief. We discern no Rule 600 violation because the Commonwealth timely brought Appellant to trial within the adjusted run date. Appellant has waived his claim challenging the sufficiency of the evidence. The jury's verdict was not

---

[12] Unfortunately, Appellant did not include a transcription of the opening statements and closing arguments from his trial, which could have further informed our analysis. *See, e.g., Jacobs*, 39 A.3d at 985 (considering the Commonwealth's closing arguments in concluding that the jury's verdict was not ambiguous).

ambiguous in light of the Commonwealth's charges against Appellant, the evidence of record, and the jury instructions. Thus, the trial court properly sentenced Appellant for Conspiracy graded as a felony. For all these reasons, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/08/2020